**KAVU, INC., Plaintiff,**

v.

**OMNIPAK CORPORATION, Defendant.**

**No. C06–109RSL.**

United States District Court, W.D. Washington, at Seattle.

Jan. 23, 2007.

Reconsideration Denied March 5, 2007.

Mark Adam Griffin, Raymond J. Farrow, Keller Rohrback, Roblin John Williamson, Williamson & Williams, Seattle, WA, for Plaintiff.

Cheryl R.G. Adamson, Rettig Osborne Forgette, Kennewick, WA, Bradley H. Bagshaw, Helsell Fetterman LLP, Seattle, WA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

ROBERT S. LASNIK, District Judge.

### I. INTRODUCTION

This matter comes before the Court on a motion for class certification filed by plaintiff Kavu, Inc. ("Kavu"). (Dkt. # 23). Plaintiff alleges that defendant Omnipak Corporation ("Omnipak") sent it an unsolicited advertisement via facsimile in violation of federal and

Washington law. Plaintiff seeks to represent a class of people who received the same facsimile. At defendant's request, the Court heard oral argument in this matter on January 23, 2007.

For the reasons set forth below, the Court finds that class certification is warranted but narrows the proposed class.

## II. DISCUSSION

### A. Factual Background.

Plaintiff Kavu operates an outdoor clothing and accessories business in Seattle. Omnipak is a small corporation, employing seven people, that sells packaging material to manufacturers and suppliers of goods. It does not generally sell to the retail market.

On August 13, 2005, Kavu received a one-page unsolicited advertisement by facsimile from Omnipak. Kavu had never done business with Omnipak and did not request the facsimile. On or around that day, Omnipak sent the same facsimile ("the facsimile") to approximately 3,000 entities in Washington, Oregon, Montana and Idaho. Omnipak obtained the recipients' facsimile numbers from Manufacturers' News, a company that apparently compiles contact information for businesses and sells the compilations as databases to third parties. Manufacturers' News' website states that it obtains information about businesses from various public sources, then contacts the businesses periodically to update the information and ensure accuracy. Declaration of James Johnson, (Dkt.# 34) ("Johnson Decl."), Ex. A. Prior to sending the facsimile, Omnipak had never before sent a broadcast facsimile, and it has not done so since.

Kavu asserts that as a result of receiving the facsimile, it experienced damages due to the loss of its paper and toner, the temporary loss of use of its facsimile machine, the potential loss of business while its facsimile machine was in use, and a violation of its right to privacy. Kavu alleges violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. The TCPA prohibits, among other things, "use of any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" absent certain conditions. 47 U.S.C. § 227(b)(1)(C). The TCPA does not prohibit sending an unsolicited advertisement if the facsimile contains a notice that meets certain requirements, *and* the sender either has an established business relationship with the recipient or the sender obtained the facsimile machine number through "a directory ... to which the recipient voluntarily agreed to make available its facsimile number for public distribution." 47 U.S.C. § 227(b)(1)(C)(ii)(II). An "unsolicited advertisement" is one that is "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

Kavu also alleges that Omnipak violated the Washington Unsolicited Facsimile Act ("WUTA"), RCW 80.36.540, and the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.* The TCPA and the WUTA provide for a $500 penalty for sending an unsolicited facsimile. 47 U.S.C. § 227(b)(3)(B); RCW 80.36.540(2). The TCPA provides for trebling the penalty if the sender "willfully or knowingly" violated the Act. 47 U.S.C. § 227(b)(3). A violation of the WUTA is also a violation of the CPA. The CPA provides for attorney's fees and the discretionary trebling of actual damages up to $10,000.

Plaintiff filed its complaint in King County Superior Court. Defendant removed the case to this Court based on the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109–2.

Plaintiff seeks to represent the following class:

All persons who received an unsolicited advertisement promoting "Omnipak's Summer Bag Special is here" via facsimile from Defendant during the period of time defined by the applicable statute of limitations.

Plaintiff seeks to represent a nationwide class for the TCPA claim, and a Washington state subclass for the WUTA and CPA claims.

**B. Subject Matter Jurisdiction.**

■ As an initial matter, this Court must determine if it has subject matter jurisdiction over this dispute. Plaintiff has raised the issue, although both parties assert that this Court has jurisdiction. Section 227(b)(3) of the TCPA provides a private right of action under the statute and states that a "person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" an action for injunctive relief or damages. Courts have interpreted that section to mean that the statute does not provide a basis for federal court jurisdiction. *See, e.g., Murphey v. Lanier,* 204 F.3d 911, 915 (9th Cir.2000) (explaining that state courts have "exclusive jurisdiction" over TCPA claims; "the failure to provide for federal jurisdiction indicates that there is none"). Although the holding in *Murphey* is broadly phrased, that case did not involve or address diversity jurisdiction. Nor does the opinion appear to preclude district courts from hearing TCPA claims where some other independent basis for jurisdiction exists. Two circuit courts have subsequently held that federal courts have diversity jurisdiction over private causes of action brought under the TCPA. *Gottlieb v. Carnival Corp.,* 436 F.3d 335 (2d Cir.2006); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir.2005); *see also Kopff v. World Research Group, LLC,* 298 F.Supp.2d 50, 55 (D.D.C.2003). In *Brill,* the court held that defendants properly removed the TCPA case under CAFA.

Similarly, in this case, jurisdiction is alleged to exist based on CAFA, which was enacted after *Murphey.* Under 28 U.S.C. § 1441(a), a defendant may remove an action from state court to a federal court that has original jurisdiction over the action. CAFA gave federal district courts original jurisdiction over class actions where the amount in controversy exceeds $5 million and at least one class member and at least one defendant are citizens of different states. 28 U.S.C. § 1332(d). In this case, both the amount in controversy requirement and the minimal diversity requirements are met. Amended

Complaint at ¶¶ 4, 5 (alleging that plaintiff is a Washington corporation and defendant is an Oregon corporation); Notice of Removal at p. 2 (alleging, based on a good faith belief, that the amount in controversy exceeds $5 million, based on facsimiles allegedly sent to hundreds of persons, statutory damages of $500 per violation and the potential for treble damages). In addition, 28 U.S.C. § 1441(a) allows a defendant to remove any action supported by diversity of citizenship "except as otherwise expressly provided by Act of Congress." No act of Congress precludes removal. Although CAFA contains explicit provisions precluding removal of some types of cases, none of those provisions applies here.

Accordingly, this Court has subject matter jurisdiction over this matter based on CAFA. Removal was proper.

**C. Federal Rule of Civil Procedure 23(a) Requirements.**

■ A party seeking to certify a class must establish that the requirements of Federal Rule of Civil Procedure 23 are met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). A court must engage in a "rigorous analysis" to determine whether the requirements of Rule 23 are satisfied. *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). However, the evidentiary showing need not be extensive. *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975).

The following prerequisites must be established under Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ Omnipak sent the facsimile to at least 3,000 entities.[1] Based on that admission, the

1. Plaintiff alleges that it has learned through discovery that over 8,000 "numbers were faxed

between July 29 and August 14, 2005." Declara-

Court finds, and defendant does not dispute, that joinder of all potential class members would be impractical, and the numerosity factor is satisfied.

**1. Commonality.**

■ Courts have described the showing required to meet the commonality requirement as "minimal" and "not high." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998); *Mortimore v. F.D.I.C.,* 197 F.R.D. 432, 436 (W.D.Wash.2000). Defendant argues that the commonality requirement is not satisfied because a key, and individual, issue will be whether each class member gave permission to receive facsimiles from Omnipak. If they did, then the facsimile was not "unsolicited" as defined by the statute. Omnipak notes that several other courts have denied class certification because of the individual nature of that issue. *See, e.g., Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169 (S.D.Ind.1997) (declining to certify class where the definition of the proposed class "would require the Court to address the central issue of liability" regarding "whether each potential class member had invited or given permission" to receive the facsimiles); *Forman v. Data Transfer, Inc.,* 164 F.R.D. 400 (E.D.Pa.1995) (same). In this case, however, Kavu has not defined the class in such a way as to require an inquiry into the merits to determine if an entity is a member of the class. Rather, class membership can be determined based on objective criteria.

Notably, whether the facsimile was "unsolicited" appears to be more of a common issue in this case than in the cases that denied class certification. Omnipak alleges that it obtained all of the recipients' facsimile numbers from the Manufacturers' News database. Therefore, whether the recipients' inclusion in the Manufacturers' News database constitutes express permission to receive advertisements via facsimile is a common issue. In fact, plaintiff has provided

some authority, albeit incomplete,[2] from the Federal Communications Commission ("FCC") stating that if a sender "obtains the number from sources of information compiled by third parties—*e.g.,* ... commercial databases ...—the sender must take reasonable steps to verify that the recipient consented to have the number listed...." Williamson Decl., Ex. C. If the FCC's opinion, or similar authority,[3] is credited and defendant took no steps to verify consent, then there would be no need for individual evidence on the permission issue. In contrast, in the cases relied on by defendant, the issue of whether each potential class member gave permission to receive the facsimiles was key. *See, e.g., Kenro, Inc.,* 962 F.Supp. at 1169; *Forman,* 164 F.R.D. 400. Those defendants did not, as defendant does here, assert that they received the facsimile numbers and consent to receive facsimiles from the recipients' inclusion in a database.

Other common issues include whether the facsimile's notice provision violated the TCPA, and if so, whether the violation was "immaterial" as Omnipak alleges. The TCPA will apply to all class members, and Washington law will apply to all members of the Washington subclass. Furthermore, it is undisputed that Omnipak engaged in a common course of conduct by obtaining the facsimile numbers in the same way and sending the same broadcast facsimile[4] to all recipients within a short period of time as part of the same effort to generate new business. Because Omnipak engaged in the same conduct with respect to all recipients, the issue of whether its conduct was willful will be common. Additional common issues include Manufacturers' News' practices in compiling its database, the circumstances surrounding Omnipak's purchase and use of the database, and which party bears the burden of proving whether the recipients gave permission to receive the facsimiles.

tion of Rob Williamson, (Dkt. # 37) ("Williamson Decl.") at ¶ 5.

**2.** The Court renders no opinion on the admissibility or persuasiveness of the FCC's opinion, as only a small portion was provided without any context.

**3.** *See also* 47 C.F.R. § 64.1200(a)(3).

**4.** The parties appear to agree that all recipients received the same facsimile.

Accordingly, the commonality requirement is met.

## 2. Typicality.

■ The typicality element requires that the claims or defenses of the proposed class representatives be typical of the claims or defenses of the class they seek to represent. Typicality has been interpreted to mean that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Falcon*, 457 U.S. at 156, 102 S.Ct. 2364 (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). In this case, defendant does not dispute that plaintiff is part of the class it seeks to represent and suffered the same injury. Omnipak argues that Kavu's claims are factually different from the class because no representative of Kavu spoke with a representative of Manufacturers' News. The record, however, does not include any evidence from Manufacturers' News and does not support Omnipak's assertion that Manufacturers' News representatives spoke with recipients of the facsimile. Even if they had, the typicality element is still met because Kavu's claims arise from the same alleged course of conduct and are based on the same legal theories. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims." *Smith v. Univ. of Wash. Law Sch.*, 2 F.Supp.2d 1324, 1342 (W.D.Wash.1998) (internal citations omitted) (explaining, "Typicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members").

■ Defendant also argues that plaintiff fails to meet the typicality element because its claims are subject to unique defenses and dominated by individual issues. Although the presence of *unique* defenses can undermine the typicality element, Omnipak's defenses to plaintiff's claims are not unique. Instead, it will no doubt assert the same defense for most if not all of the class members' claims: that recipients consented to receive advertisements via facsimile by providing their contact information to Manufacturers' News. Therefore, the assertion of that defense does not render plaintiff's claims atypical. However, Omnipak has also provided some evidence that approximately 100 of the recipients were existing customers. Johnson Decl. at ¶ 6 ("We know from a subsequent examination of our phone records that it appears that we attempted to fax close to 100 of our current customers when we sent out our 'broadcast fax' "). The statute provides a defense for sending facsimiles to entities with whom the sender has an established business relationship. Because that defense will be unique to a small portion of the proposed class, the Court will exclude Omnipak's existing customers from the class. *See, e.g., Carnett's, Inc. v. Hammond*, 279 Ga. 125, 129, 610 S.E.2d 529 (2005) (declining to certify a TCPA class, based on lack of commonality, where some of the recipients "likely" had an established business relationship with defendant and plaintiff did not exclude those recipients from the proposed class). Determining which recipients had established business relationships with defendant should be a relatively straightforward matter using objective evidence. With that exclusion, the proposed class meets the typicality requirement.

## 3. Adequacy.

■ The adequacy element requires that (1) the named plaintiff must be able to prosecute the action vigorously through qualified counsel, and (2) the representative cannot have antagonistic or conflicting interests with the unnamed members of the class. *See, e.g.; Smith*, 2 F.Supp.2d at 1343. Plaintiff has qualified counsel who have represented plaintiffs in numerous class actions, and defendant does not challenge counsel's qualifications. In addition to seeking the same relief as other class members, Kavu's Chief Financial Officer has stated that the company is willing to undertake and understands the responsibilities of being a class representative. Declaration of Joe Pinsoneault, (Dkt.# 26) ("Pinsoneault Decl.") at ¶¶ 4–8. Defendant does not challenge plaintiff's adequacy as a repre-

sentative, and the Court finds that it is adequate.

### D. Federal Rule of Civil Procedure 23(b) Requirements.

In addition to the Rule 23(a) prerequisites, plaintiff must also demonstrate that the class action is maintainable pursuant to Rule 23(b).

#### 1. Fed.R.Civ.P. 23(b)(2).

Plaintiff argues that certification is appropriate under Fed.R.Civ.P. 23(b)(2), which requires a court to find that "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The Court must consider whether "the predominant relief is injunctive and declaratory." *Beck v. The Boeing Co.*, 203 F.R.D. 459, 465 (W.D.Wash.2001), *vacated in part on other grounds*, 60 Fed.Appx. 38 (9th Cir.2003); *see also Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir.2003) (explaining that "the claim for monetary damages must be secondary to the primary claim for injunctive relief;" focusing on the language of the rule and plaintiff's intent in bringing the suit). The "predominance" element requires the Court to consider whether "plaintiffs would have brought suit to obtain the injunctive relief they seek even if they could not obtain a money recovery." *Beck*, 203 F.R.D. at 466. Defendant argues that injunctive relief cannot be the primary goal because it is "unlikely" that Kavu would have brought this action without the monetary relief allowed under the statutes. However, it is more unlikely that Kavu would undertake this action, particularly as a class representative, for a recovery that is unlikely to exceed $500. Furthermore, Kavu's representative states that Kavu "receives large numbers of unwanted facsimile advertisements every year" and its "primary interest in bringing this action is to stop companies like Defendant from continuing the practice of sending unsolicited facsimile advertisements." Pinsoneault Decl. at ¶7. Defendant also asserts that injunctive relief

is unnecessary because it is willing to stipulate that it will not send unsolicited facsimiles again. It did not make that promise before plaintiff filed this lawsuit, and plaintiff is not required to take defendant at its word. Moreover, injunctive relief need not be the only relief sought.

Defendant also cites two cases, neither of which involved a TCPA claim, which found that certification under Rule 23(b)(2) was inappropriate because plaintiffs' requests for punitive damages predominated over their claims for injunctive relief.[5] It does not appear that the incidental statutory damages here are punitive damages. Regardless, defendant has not cited any cases declining to certify a TCPA class on that basis. In fact, a Washington court recently certified a class asserting TCPA claims under Washington Rule of Civil Procedure 23(b)(2), which is equivalent to the federal rule. *Transportation Instit. v. Promo Dart, Inc.*, No. 6–2–03460–1 SEA (King County Superior Court, November 9, 2006). In addition, the damages sought are incidental to the primary claim for injunctive relief because damages are statutory and a fixed amount. Accordingly, damages may be awarded based on objective standards rather than based on complex, individual determinations. *See, e.g., Sitton v. State Farm Mut. Auto. Ins. Co.*, 116 Wash.App. 245, 63 P.3d 198 (2003). In this case, damages will be (1) nothing, if defendant prevails on its argument that its violations were "immaterial," (2) $500 if it does not prevail on that claim, or (3) $1,500 if the Court finds that its conduct was willful. Because defendant engaged in the same conduct regarding all of the class members, the damages issues and calculations will be the same for all. Moreover, if plaintiff proves its allegations, injunctive relief would benefit all class members.

For all of these reasons, the Court finds that certification under Rule 23(b)(2) is appropriate because Omnipak has acted on grounds generally applicable to the class, and final injunctive or declaratory relief is appropriate for the class.

---

5. Defendant's Opposition at p. 13 (citing *Taylor v. Flagstar Bank, FSB*, 181 F.R.D. 509, 518

(M.D.Ala.1998) and *Hernandez v. United Fire Ins. Co.*, 79 F.R.D. 419, 429 (N.D.Ill.1978)).

## 2. Fed.R.Civ.P. 23(b)(3).

■ Plaintiff also contends that class certification is appropriate under Fed.R.Civ.P. 23(b)(3), which requires a court to find

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The purpose of this rule is to identify those actions in which certification of a class "would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed.R.Civ.P. 23 advisory committee's note (1966). When considering whether common questions predominate and whether the class action is superior to other methods of adjudication of the controversy, a court should consider:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). In this case, individual damages are small, and class members would be unlikely to litigate claims on their own. In fact, no other claims have been filed based on Omnipak's broadcast facsimile. Based on the recency of the statute, potential class members may be unaware of their legal rights. Defendant argues that potential class members could sue individually because the CPA provides for recovery of attorney's fees. While attorney's fees are available for Washington plaintiffs, they are not available under the TCPA.

The parties have not identified any difficulties likely to be encountered in the management of this class action. This Court is an appropriate forum for this action because plaintiff seeks to represent a Washington subclass.

As with the commonality and typicality elements, defendant reiterates its argument that the issue of whether permission was granted will predominate. As set forth above regarding the commonality element, the class will share numerous factual and legal issues. Also, common legal and factual issues will underlie the issue of whether the facsimiles were unsolicited and whether the recipients voluntarily provided their facsimile numbers for public distribution. Accordingly, and based on the findings set forth above regarding commonality and typicality, the Court finds that common issues predominate.

■ Defendant argues that class action treatment is not the superior method of adjudicating this case because damages for the class could be largely disproportionate to the harm caused. Defendant notes that with a class of potentially 3,000 members and damages ranging from $500 to $1,500 per member, it could face damages of $1.5 million to $4.5 million or more, grossly disproportionate to the loss of a little ink and toner. Defendant's argument, however, is actually a challenge to the statutory amount of damages, set by Congress, rather than to the best method of adjudicating this case. If the claims were adjudicated individually, defendant would owe the same amount of damages. Rather, it is hoping that if no class is certified, it will avoid damages for the vast majority of its violations. The Court will not decline to certify a class on that basis. Furthermore, the class size is a direct result of defendant's large number of violations, for which it should not be rewarded. *See, e.g., ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 101, 50 P.3d 844 (2002) (reversing denial of class certification for TCPA claims; rejecting argument that potentially large damages for the class should preclude class certification). In addition, the Court has discretion to ensure that the amount of damages and attorney's fees are reasonable.

Defendant also argues that the potential for a large damages award is unconstitutional. Although that issue will need to be addressed, it will not prevent the Court from

certifying the class. Instead, it will be better addressed if liability is established and in the context of determining the appropriate amount of damages.

Accordingly, common issues predominate and proceeding as a class action is a superior method of adjudicating the claims. Certification under Fed.R.Civ.P. 23(b)(3) is warranted.

### E. Conclusions Regarding Class Certification.

The Court finds that plaintiff has met the class certification prerequisites of Fed. R.Civ.P. 23(a) and shown that the proposed class may be maintained pursuant to Fed. R.Civ.P. 23(b)(2) and 23(b)(3). Accordingly, the Court certifies the following class:

> All persons, excluding those with whom Omnipak had an established business relationship, who received an unsolicited advertisement promoting "Omnipak's Summer Bag Special is here" via facsimile from Defendant during the period of time defined by the applicable statute of limitations.

The Court certifies a nationwide class for the TCPA claim, and a Washington state subclass for the WUTA and CPA claims.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART plaintiff's motion for class certification (Dkt. # 23) and certifies a class as set forth in this order.

### ORDER DENYING MOTION FOR RECONSIDERATION

### I. INTRODUCTION

This matter comes before the Court on a motion for reconsideration filed by defendant Omnipak Corporation ("Omnipak").[1] (Dkt. # 48). Omnipak seeks reconsideration of the Court's January 23, 2007 order granting in part and denying in part plaintiff's motion for class certification (Dkt. # 44, the "Order").

The Court granted the motion for class certification but certified a class that was narrower in one respect than the one proposed by plaintiff.

For the reasons set forth below, the Court denies the motion for reconsideration.

### II. DISCUSSION

Omnipak has filed its motion as a motion for reconsideration, but also moves for relief under Federal Rules of Civil Procedure 23(c)(1)(C) and 60. The Court therefore considers both standards. Under Rule 23(c)(1)(C), an order certifying a class "may be altered or amended before final judgment."

Omnipak argues that the class is not ascertainable because it is defined with reference to ultimate issues rather than objective facts. In the Order, the Court certified the following class:

> All persons, excluding those with whom Omnipak had an established business relationship, who received an unsolicited advertisement promoting "Omnipak's Summer Bag Special is here" via facsimile from Defendant during the period of time defined by the applicable statute of limitations.

The Order analyzed that issue and distinguished the cases Omnipak cites in its motion for reconsideration. Omnipak has not shown that the prior ruling was in error or that it should be altered or amended.

Omnipak further contends that the Court erred by certifying a class where individual issues predominate and a class action is not a superior method of adjudication. As an initial matter, Omnipak argues that the Order confused the issue of commonality with the issue of whether common issues predominate. The Order, however, explicitly et forth the relevant factors regarding predominance and analyzed them. Similarly, the Order also extensively analyzed the issue of whether common issues predominate in light of the typically individual nature of the permission issue. Omnipak has not shown that an alter-

---

1. Because this matter can be decided on the parties' memorandum, supporting documents, and the record, and because the Court heard oral argument on the motion for class certification, Omnipak's request for oral argument is denied.

ation or amendment of the Order is warranted.

Omnipak also argues that an individual inquiry will be necessary to determine whether any potential class member was an intended recipient of the facsimile. Whether the entity was an "intended" recipient is irrelevant. Likely recipients can be determined from the Manufacturers' News database list and/or from Omnipak's telephone records. Kavu's expert states that he will be able to determine whether a facsimile transmission was made and completed based on defendant's telephone records. Declaration of Michael Goodman, (Dkt. # 53) at ¶ 6. Furthermore, although it will have to be determined whether class members received the relevant facsimile and received it by "telephone facsimile machine" as set forth in the statute, those two individual issues do not defeat certification. As set forth in the Order, numerous common issues exist and predominate, and a class action is the superior method of adjudicating the matter.

Omnipak further argues, for the first time, that certification was improper because Kavu has failed to advance the non-Washington state law claims of other potential class members. Despite Omnipak's allegation, plaintiff has not breached its fiduciary duty to non-Washington class members because it lacks standing to assert other state law claims.[2] Furthermore, although variations among state laws can undermine the predominance element, that will not be an issue in this case, where only federal and Washington claims are asserted.

Defendant also alleges that the Court erred in considering the existence of defendant's liability insurance. Although plaintiff referred to the insurance, the Court did not consider the issue and the Order contains no reference to it.

Omnipak also argues that no class should have been certified under Rule 23(b)(2) because plaintiff does not seek primarily injunctive relief. The Court has already considered and rejected Omnipak's argument. Omnipak has not shown that the prior ruling was erroneous or that it should be altered or amended.

## III. CONCLUSION

For all of the foregoing reasons, the Court DENIES defendant's motion for reconsideration (Dkt. # 48).

---

2. Omnipak also alleges, in a footnote, that non-Washington class members may be unable to pursue TCPA claims if their states have not enacted legislation allowing suits under the TCPA. Omnipak's Motion at p. 10 n. 7. The authority on which Omnipak relies is not binding and represents the minority position. *Id.* (citing *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 184 S.W.3d 707, 716 (Tex.2006)). As such, the issue does not support decertifying the class.