Flemming KRISTENSEN, Plaintiff,

v.

CREDIT PAYMENT SERVICES, f/k/a MyCashNow.com; Enova International, Inc.; Pioneer Financial Services, Inc.; LeadPile LLC; and ClickMedia LLC, d/b/a Net1promotions LLC, Defendants.

Case No. 2:12–CV–00528–APG.

United States District Court, D. Nevada.

Signed March 26, 2014.

1294

Rafey S. Balabanian, Ryan D. Andrews, John C. Ochoa, Edelson PC, Chicago, IL, John Benedict, Law Offices of John Benedict, Las Vegas, NV, for Plaintiff.

Gregory T. Wolf, Steven Martin Aaron, Dentons U.S. LLP, James M. Humphrey, IV, Robert V. Spake, Russell S. Jones, Jr., Polsinelli P.C., Kansas City, MO, Dan R. Waite, John E. Bragonje, Lewis Roca Rothgerber, LLP, Chad R. Fears, Snell & Wilmer, LLP, Patricia Lee, Hutchison & Steffen, John H. Gutke, Fox Rothschild LLP, Las Vegas, NV, Martin L. Welsh Law Office of Hayes & Welsh, Henderson, NV, Brian Patrick O'Meara, McGuireWoods LLP, Chicago, IL, Kathryn Ann Reilly, Husch Blackwell LLP, Denver, CO, Michael K. Alston, Ryan W. Mitchem, Husch Blackwell LLP, Chattanooga, TN, Jeffrey M. Rosenfeld, Karl S. Kronenberger, Virginia A Sanderson, Kronenberger Burgoyne, LLP, San Francisco, CA, for Defendants.

### Order Denying Motions to Dismiss and Granting Motion for Class Certification

ANDREW P. GORDON, District Judge.

## I. BACKGROUND

Flemming Kristensen ("Kristensen") filed a class action claiming that Credit Payment Services ("CPS"), a payday lender formerly known as MyCashNow.com, marketed its services to him by causing its agents to send an unauthorized text message to his cell phone. The alleged text message stated:

DO YOU NEED UP TO $5000 TODAY?

EASY QUICK AND ALL ONLINE AT:

*WWW.LEND5K.COM*

24 MONTH REPAY, ALL CREDIT OK

REPLY STOP TO END [1]

The Complaint alleged that the website in the text message—www.lend5k.com — automatically redirected to websites owned and operated by CPS and/or its agents who promoted CPS's payday loan products. Upon the approval of a completed loan application, customers received a loan agreement with a truth-in-lending disclosure which identified CPS's MyCash-Now.com entity as the lender. Kristensen further alleged that CPS and/or its agents sent text messages using a dedicated telephone number and automated dialing equipment, and that he did not consent to receive the above text message. Kristensen claims this conduct violated 47 U.S.C. § 227(b)(1)(A)(iii), a subsection of the federal Telephone Consumer Protection Act of 1991.

In February 2013, the Court denied CPS's motion to dismiss and granted Kristensen's motion to amend the Complaint to name additional defendants.[2] In March 2013, Kristensen timely filed his First Amended Class Action Complaint (the "FAC").[3] He added four defendants: Enova International, Inc. ("Enova"), Pioneer Financial Services, Inc. ("Pioneer"), LeadPile LLC ("LeadPile"), and ClickMedia LLC, d/b/a Net1Promotions LLC ("Click Media") (collectively with CPS, the "Defendants").

Kristensen alleges that, like CPS, Enova and Pioneer are short-term, payday lenders (collectively, the "Lender Defendants"). He contends that in October 2010, if not before, the Lender Defendants contracted with LeadPile to generate customers. LeadPile, in turn, allegedly contracted with various companies, including Click Media, to generate leads and drive web traffic to Defendants' websites. Next, Click Media allegedly "directed" various unnamed "affiliate marketers to transmit *en masse* text messages containing 'links' that direct[ed] consumers to various websites operated by Defendants and/or their agents." [4]

Kristensen asserts that "[w]hen a customer visits one of these websites, he or she is automatically redirected to websites controlled by Click Media, where consumers begin the loan application process in order to receive loans directly from [the Lender Defendants]." [5] Kristensen next asserts that he received the above text message in December 2011 from the phone number: 13305646316.[6] He again alleges that Click Media owns the website "*www.lend5k.com,*" and he newly alleges that Click Media also owns the website to which "www.lend5k.com" automatically redirects: "https://thesmartcreditsolution.securelinkcorp.com." [7] When a consumer applies for a loan on this latter site, "the consumer is forwarded to a website owned and operated by … LeadPile, who then matches each customer with specific lenders, including [the Lender Defendants]." [8]

Kristensen alleges that Defendants sent the above text message to him using "equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial such numbers." [9] "These

---

1. (Dkt. No. 1 at 4; Dkt. No. 35 at 6.)

2. (Dkt. No. 33.)

3. (Dkt. No. 35.)

4. (*Id.* ¶ 31 (emphasis in original).)

5. (*Id.* ¶ 32.)

6. (*Id.* ¶ 35.)

7. (*Id.* ¶ 36 n. 2.)

8. (*Id.* ¶ 37.)

9. (*Id.* ¶ 48.)

text calls were made *en masse* through the use of a dedicated telephone number without the prior express of [Kristensen] and the other members of the [purported] Class to receive such wireless spam." [10][11]

The FAC pleads the same sole claim for relief as the Complaint: violation of 47 U.S.C. § 227(b)(1)(A)(iii). Kristensen seeks the following relief: (1) an order certifying the Class as defined in the FAC; [12] (2) actual and/or statutory damages; (3) an injunction requiring Defendants to cease all wireless spam activities; and (4) costs and reasonable attorney's fees.

Click Media has moved to dismiss the FAC under Rule 12(b)(6) on the basis that Kristensen has insufficiently pled that either Click Media or its purported agents sent the text message to him. [13] LeadPile makes substantially similar arguments in its motion to dismiss. [14] Kristensen responded that (1) the ordinary rules of agency do not apply to vicarious liability under the TCPA; rather, a defendant is liable if a text message was sent on its behalf such that it received some benefit from the text message; and (2) even if the ordinary rules of agency apply, the TCPA claim survives because the FAC's factual allegations support a reasonable inference that the text message to Kristensen was sent by agents of Click Media and LeadPile, respectively. [15]

One week after submitting his response, Kristensen filed a notice of supplemental authority. [16] He calls the Court's attention to the Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules released by the Federal Communications Commission on May 9, 2013. [17] Broadly put, the 2013 FCC Ruling represents and explains the FCC's determination that vicarious liability under 47 U.S.C. § 227(b) is governed by federal common law principles of agency. The FCC issued this document after a notice-and-comment period in which various interested parties submitted comments and replies to those comments. [18] Kristensen relies on the 2013 FCC Ruling to assert that federal common law agency principles apply instead of state agency laws, and that the consumer need not provide proof of vicarious liability at the time he files his complaint. Kristensen is correct on both points. However, although proof is not required at the pleading phase because all well-pleaded allegations in a complaint are deemed true, those allegations must nonetheless support a plausible claim for relief. [19]

Kristensen subsequently filed a motion

10. (*Id.* ¶ 49.)

11. Kristensen's Motion for Class Certification alleges other facts, but the Court's analysis of the Motions to Dismiss is based solely on the facts alleged in the FAC. Where appropriate, the additional facts alleged in the Motion for Class Certification are discussed in the section below addressing class certification.

12. The proposed class description in the Motion for Class Certification supersedes the description in the FAC.

13. (Dkt. No. 65.)

14. (Dkt. No. 67.)

15. (Dkt. No. 71.)

16. (Dkt. No. 72.)

17. *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of Cal., Ill., N.C., & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules,* 28 F.C.C.R. 6574 (2013) [the *"2013 FCC Ruling"*].

18. (Dkt. No. 72–1 at 6, 7, 23.)

19. *Ashcroft v. Iqbal,* 556 U.S. 662, 696, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

for class certification.[20] This Order resolves the two motions to dismiss and the class certification motion.[21]

## II. ANALYSIS

### A. Motions to Dismiss

#### 1. Legal Standard—Fed. R. Civ. P. 8, 12(b)(6)

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."[22] While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[23] "Factual allegations must be enough to rise above the speculative level."[24] To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face."[25]

District courts must apply a two-step approach when considering motions to dismiss.[26] First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor.[27] Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations.[28]

Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[29] Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[30] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[31] Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief."[32] When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed.[33] "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the [district] court to draw on its judicial experience and common sense."[34]

#### 2. Legal Standard—Telephone Consumer Protection Act

In pertinent part, the TCPA provides:

It shall be unlawful for any person ... to make any call (other than a call made ... with the prior express consent of the called party) using any automatic telephone dialing system ... to any tele-

---

20. (Dkt. No. 113)

21. (Dkt. Nos. 65, 67, 113.)

22. Fed.R.Civ.P. 8(a)(2); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

23. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

24. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

25. *Iqbal,* 556 U.S. at 696, 129 S.Ct. 1937 (internal quotation marks and citation omitted).

26. *Id.* at 679, 129 S.Ct. 1937.

27. *Id.; Brown v. Elec. Arts, Inc.,* 724 F.3d 1235, 1247–48 (9th Cir.2013).

28. *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937; *Brown,* 724 F.3d at 1248.

29. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

30. *Id.* at 679, 129 S.Ct. 1937.

31. *Id.* at 663, 129 S.Ct. 1937.

32. *Id.* at 679, 129 S.Ct. 1937 (internal quotation marks and citation omitted).

33. *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

34. *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

phone number assigned to a . . . cellular telephone service[.] [35]

"The term 'automatic telephone dialing system' ["ATDS"] means equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." [36] A text message to a cell phone is considered a "call" for purposes of the TCPA. [37]

■ The Ninth Circuit has established three elements for a TCPA violation: "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." [38]

■ The 2013 FCC Ruling determined that vicarious liability under the TCPA, 47 U.S.C. § 227(b) in particular, is governed by federal common law principles of agency. [39] Even if *Chevron* deference does not apply to that ruling because it arguably does not have the force of law and arguably was not promulgated under the FCC's rulemaking authority, *Skidmore* deference applies because the FCC's reasoning is sound. [40]

Kristensen argues that a 1995 FCC Ruling [41] determined that vicarious liability under the TCPA is governed by an "on behalf of" standard which imposes liability on any party that benefits from an unsolic-ited call made in violation of 47 U.S.C. § 227(b), regardless of whether an agency relationship existed. However, the 1995 FCC Ruling is apparently superseded by the 2013 FCC Ruling. Also, Kristensen's selective quotation of the 1995 ruling is misleading. Here is the relevant paragraph from the 1995 ruling, with the portion Kristensen quoted in italics:

> Our *rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.* Calls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call. Accordingly, we revise our rules to clarify that telephone solicitations made by or on behalf of tax-exempt nonprofit organizations are not subject to our rules governing telephone solicitations. [42]

Kristensen failed to note that the FCC used the word "agent" in the sentence following the portion he quoted. Moreover, district courts in the Ninth Circuit have regularly applied traditional agency principles to claims under 47 U.S.C. § 227(b). [43]

Kristensen argues that the Ninth Circuit held in *Greenberg v. Sala* [44] that the particulars of an agency relationship need not be

---

**35.** 47 U.S.C. § 227(b)(1)(A)(iii).

**36.** *Id.* § 227(a)(1).

**37.** *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir.2009).

**38.** *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir.2012).

**39.** *2013 FCC Ruling*, 28 F.C.C.R. at 6586–87.

**40.** *See McMaster v. U.S.*, 731 F.3d 881, 891–93 (9th Cir.2013) (citing *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

**41.** *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C.R. 12391 (1995) [the *"1995 FCC Ruling"*].

**42.** *1995 FCC Ruling*, 10 F.C.C.R. at 12397.

**43.** *E.g., Thomas v. Taco Bell Corp.*, 879 F.Supp.2d 1079, 1084 (C.D.Cal.2012); *In re Jiffy Lube Int'l Inc., Text Spam Litig.*, 847 F.Supp.2d 1253, 1257 (S.D.Cal.2012); *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165, 1168, 1171 (N.D.Cal.2010).

**44.** 822 F.2d 882 (9th Cir.1987).

pleaded to survive a motion to dismiss. He correctly describes *Greenberg*'s holding, but *Greenberg*'s ongoing validity is highly doubtful under the current pleading regime established by the Supreme Court in *Iqbal* and *Twombly*. The Western District of Washington recently rejected the same argument that Kristensen makes here.[45] Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.[46]

 "The general principles of the federal common law of agency have been formulated largely based on the Restatement of Agency." [47]

> The principles of agency law ... are well settled: [a]ctual authority consists of powers which a principal directly confers upon an agent, as well as those the principal causes or permits the agent to believe he or she possess.... Apparent authority focuses on third parties. It arises when a third party reasonably believes that the putative agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations.[48]

The *Restatement* also imposes liability on a principal whose agent appoints a subagent to perform the duties that the principal authorized the agent to perform:

An agent who appoints a subagent delegates to the subagent power to act on behalf of the principal that the principal has conferred on the agent. A subagent acts subject to the control of the appointing agent, and the principal's legal position is affected by action taken by the subagent as if the action had been taken by the appointing agent. Thus, a subagent has two principals, the appointing agent and that agent's principal.[49]

 The 2013 FCC Ruling recognized that an agency relationship could arise by ratification.[50] "[A] seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits." [51] "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." [52] Notably, "the principal's assent need not be communicated to the agent or to third parties whose legal relations will be affected by the ratification." [53]

 Whether an agency relationship exists is ordinarily a question of fact.[54]

### 3. Application

 The FAC pleads sufficient facts to render it plausible that the party who "made" the "call"—i.e., the party who actu-

45. *Thornes v. IMB Lender Bus. Process Servs., Inc.*, 2011 WL 677428 (W.D.Wash.2011).

46. *See Iqbal*, 556 U.S. at 696, 129 S.Ct. 1937.

47. *Doe I v. Unocal Corp.*, 395 F.3d 932, 972 (9th Cir.2002), *on reh'g en banc*, 403 F.3d 708 (9th Cir.2005).

48. *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F.Supp.2d 1141, 1167–68 (D.Idaho 2011) (citing 2A C.J.S. *Agency* § 133; Restatement (Third) of Agency § 2.01 (2006)).

49. Restatement (Third) of Agency § 3.15.

50. *2013 FCC Ruling*, 28 F.C.C.R. at 6587.

51. *Id.* (citing Restatement (Third) of Agency § 4.01).

52. Restatement (Third) of Agency § 4.01(2).

53. *Id.* § 4.01 cmt. b.

54. *Nat'l Football Scouting Inc. v. Cont'l Assur. Co.*, 931 F.2d 646, 649 (10th Cir.1991).

ally sent the text message to Kristensen—was acting as an agent or subagent of LeadPile and/or Click Media.[55] The Lender Defendants contracted with LeadPile, who in turn contracted with Click Media. Click Media directed another entity to send a text message to multiple persons. That message included a link which automatically redirected to a site controlled by Click Media. Upon completing a loan application on Click Media's site, the consumer was directed to a site owned by Lead-Pile. LeadPile then sold the leads to the Lender Defendants.

Thus, there was a "downhill" series of contractual relationships starting with the Lender Defendants down through Click Media, and the benefits of the text message (leads for potential payday lending customers) flowed back "uphill" through Click Media and LeadPile to the Lender Defendants. Kristensen has sufficiently pleaded a plausible agency relationship based on actual authority (arising through contractual relationships), apparent authority (based on a reasonable person's perception of who authorized the sending of the text message), and ratification (based on the apparent benefits received by Click Media and LeadPile). Kristensen need not plead the identity of every player in the alleged scheme nor every nuance of the relationships among the Defendants; indeed, the information necessary to connect all the players is likely in Defendants' sole possession.[56]

Kristensen also sufficiently pleads that he did not consent to receive the text message and that the message was sent using an ATDS.

Accordingly, LeadPile's and Click Media's motions to dismiss are denied.

**B. Motion for Class Certification**

### 1. Legal Standard

To obtain class certification, the plaintiff must prove the threshold requirement of "ascertainability"—that the proposed class's membership can be determined by objective criteria.[57]

The plaintiff must next prove that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met.[58] Although neither the Supreme Court nor the Ninth Circuit has established the proper standard of proof for class certification, this Court follows other district courts within the Ninth Circuit that have applied the preponderance standard.[59]

The Court may consider inadmissible evidence to determine class certification.[60] "On a motion for class certifica-

---

55. See *Iqbal*, 556 U.S. at 696, 129 S.Ct. 1937.

56. See *Charvat v. Allstate Corp.*, —— F.Supp.3d ——, No. 13–C–7104, 2014 WL 866377 at *2 (N.D.Ill. Mar. 5, 2014); *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Protection Act Litig.*, No. 11–MD2295, 2014 WL 223557 at *3 (S.D.Cal. Jan. 8, 2014); *Jiffy Lube*, 847 F.Supp.2d at 1258; *Kramer*, 759 F.Supp.2d at 1171.

57. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n. 3 (9th Cir.2014); *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089 (N.D.Cal.2011).

58. *Comcast Corp. v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515

(2013); *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

59. See e.g., *Cholakyan v. Mercedes–Benz, USA, LLC*, 281 F.R.D. 534, 551 n. 88 (C.D.Cal. 2012).

60. *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D.Cal.2008) ("Unlike a summary judgment motion under Fed. R.Civ.P. 56, a motion for class certification

tion, the Court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims. Therefore, the Federal Rules of Evidence take on a substantially reduced significance, as compared to a typical evidentiary hearing or trial." [61]

Kristensen describes the proposed class as follows:

> All individuals who were sent a text message from telephone numbers "330–564–6316," "808–989–5389," and "209–200–0084" from December 5, 2011 through January 11, 2012. [62]

### 2. Ascertainability

▮ "In order for a proposed class to satisfy the ascertainability requirement, membership must be determinable from objective, rather than subjective, criteria." [63] The proposed class definition should "describe[ ] a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." [64] Determination of class membership should not entail detailed individual inquiries. [65] Similarly, class definitions based on the merits of individual members' claims are not sufficiently definite. [66] The inquiry into class membership must not require holding countless hearings resembling "mini-trials." [67]

▮ Here, objective criteria determine who are class members—all those who were sent a text message from one of three phone numbers during an approximately one-month period. Data from T-Mobile calling lists can be used to identify the individual class members. Prospective plaintiffs can readily identify themselves as class members based on receipt of the text message. Consent is not at issue because the class definition does not turn on consent, and consent is more appropriately addressed under Rule 23(b)(3)'s predominance inquiry. Individual mini-trials will not be necessary to determine who was sent the text message from the relevant phone numbers during the relevant time period. Thus, the ascertainability requirement is met. [68]

### 3. Rule 23(a)

▮ In pertinent part, Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable [numerosity];
>
> (2) there are questions of law or fact common to the class [commonality];

---

... need not be supported by admissible evidence.")

**61.** *Keilholtz v. Lennox Hearth Products Inc.,* 268 F.R.D. 330, 337 n. 3 (N.D.Cal.2010) (internal quotation marks and citation omitted).

**62.** (Dkt. No. 114 at 4.)

**63.** *Xavier,* 787 F.Supp.2d at 1089 (citing *Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 30 (2d Cir.2006)).

**64.** *Vandervort v. Balboa Capital Corp.,* 287 F.R.D. 554, 558 (C.D.Cal.2012).

**65.** 3 William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed.2013).

**66.** *Id.* § 3:6; *Vandervort,* 287 F.R.D. at 557 ("A class must be ascertainable without inquiring into the merits of the case.").

**67.** Newberg on Class Actions § 3:6.

**68.** *See Vandervort,* 287 F.R.D. at 557–58; *Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559 (W.D.Wash.2012); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.,* 281 F.R.D. 327, 331 (E.D.Wis.2012); *CE Design · Ltd. v. Cy's Crabhouse N., Inc.,* 259 F.R.D. 135, 141 (N.D.Ill.2009).

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and

(4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." [69] "The party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." [70]

■■■■ A district court should certify a class only if the court "is satisfied, after a rigorous analysis," that the Rule 23 prerequisites have been met. [71] "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." [72] But "Rule 23 does not authorize a preliminary inquiry into the merits of the suit for purposes other than determining whether certification [is] proper." [73]

### a. Numerosity

■■■■ Based on evidence Kristensen obtained from T–Mobile, Defendants sent violative text messages *en masse* to 98,779 individuals. Joinder of so many persons would undoubtedly be impractical. [74] Con-

trary to Click Media's arguments the Court may rely on Kristensen's counsel's Declaration, which includes a summary of the data obtained from T–Mobile. [75] Notably, Click Media is the only defendant arguing that numerosity is not met; the other four defendants concede the point. [76]

### b. Commonality

■■■■ Commonality is inherently satisfied if Rule 23(b)(3)'s predominance requirement is met. [77] Predominance requires at least one common question, as does Rule 23(a)(2), but also requires that the common question, or questions, outweigh the noncommon questions. [78] The Court thus assesses commonality within the predominance inquiry below.

### c. Typicality

■■■■ "The test of typicality is whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." [79] "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the

---

**69.** *Dukes*, 131 S.Ct. at 2551.

**70.** *Mario v. U.P.S.*, 639 F.3d 942, 947 (9th Cir.2011).

**71.** *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

**72.** *Dukes*, 131 S.Ct. at 2551.

**73.** *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n. 8 (9th Cir.2011) (citing *Dukes*, 131 S.Ct. at 2552 n. 6).

**74.** *See Kavu v. Omnipak Corp.*, 246 F.R.D. 642, 646–47 (W.D.Wash.2007).

**75.** *See* Fed.R.Evid. 1006; *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 337 n. 3 (N.D.Cal.2010); *Parkinson*, 258 F.R.D. at 599.

**76.** (Dkt. No. 148 at 9 n. 4.)

**77.** *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

**78.** Newberg on Class Actions § 3:27.

**79.** *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted).

relief sought."[80] "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."[81]

 Kristensen and the purported class members allegedly received identical text messages from the same senders in a specified time period. This is more than sufficient for typicality.

### d. Adequacy

 "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[82] "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."[83]

 Kristensen has met his burden of demonstrating he is an adequate class representative. The alleged discovery misconduct is insufficient to defeat Kristensen's adequacy. There are no indications that Kristensen has any conflicts of interest, and he appears sufficiently motivated to vigorously pursue the interests of absent class members.[84]

Defendants do not challenge the adequacy of Edelson PLC as class counsel.

### 4. Rule 23(b)

A class action may be maintained if Rule 23(a) is satisfied and if: ...

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.[85]

### a. Predominance

 "The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[86] "The focus is on the relationship between the common and individual issues."[87] "Implicit in the satisfaction of the predominance test is the notion that the adjudication of

80. *Id.*

81. *Meyer,* 707 F.3d at 1042 (internal quotation marks and citation omitted).

82. *Ellis,* 657 F.3d at 985 (internal quotation marks and citations omitted).

83. *Id.*

84. *See* NEWBERG ON CLASS ACTIONS § 3:54.

85. FED.R.CIV.P. 23(b)(3).

86. *In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 571 F.3d 953, 957 (9th Cir.2009) (internal quotation marks and citation omitted).

87. *Id.*

common issues will help achieve judicial economy."[88]

*Newberg on Class Actions* articulates a practical, two-step inquiry.[89] First, the court characterizes the issues necessary to resolve the merits as either common or individual.[90] An issue is common if (1) it is susceptible to generalized, class-wide proof; or (2) if the same evidence will suffice for each member to make a prima facie showing of that issue.[91] An issue is individual if members of a proposed class will need to present evidence that varies from member to member.[92] This first step amounts to an analysis of commonality under Rule 23(a)(2).

Second, the court must determine if the common issues predominate. The analysis is pragmatic and is more qualitative than quantitative.[93] Common questions do not predominate if the resolution of an over-arching common issue breaks down into an unmanageable variety of individual legal and factual issues leading to an inordinate number of evidentiary hearings.[94]

 Kristensen correctly identifies several common issues that will generate common answers applicable class-wide: (1) whether the equipment used to send the text messages is an ATDS, as defined by statute; (2) whether Defendants are vicariously liable for the text messages; and (3) whether the class members expressly consented to receive the text messages.[95]

As set forth above, vicarious liability turns on the federal common law of agency and can arise from actual authority, apparent authority, or ratification. Actual authority depends only on relationships among the Defendants. Ratification depends on Defendants' post-message behavior without concern for any conduct by the class members. Apparent authority depends on whether a reasonable person would believe that the sender of the text messages, or the person that caused the text messages to be sent, had authority to act on behalf of Defendants.[96] Because the inquiry is limited to how a reasonable person would perceive the text message at issue, there is no need to determine how individual class members perceived the text message or the successive web pages they may have visited. Agency can be resolved on a class-wide basis.

 The parties dispute whether consent is an element of the prima facie case or an affirmative defense, but, as the Fifth Circuit has held, that issue is irrelevant for class certification.[97] Kristensen's burden at the class certification phase is to "advance a viable theory employing generalized proof to establish liability with respect to the class involved."[98] If consent is an

---

88. *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996).

89. Newberg on Class Actions § 4:49.

90. *Id.*

91. *Id.*

92. *Id.*

93. *Id.* §§ 4:49, 4:51.

94. *See id.* § 4:50 (internal quotation marks and citation omitted).

95. *Dukes*, 131 S.Ct. at 2551 ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (internal quotation marks and citation omitted, emphasis in original)).

96. *See In re Fresh & Process Potatoes Antitrust Litig.*, 834 F.Supp.2d at 1167–68.

97. *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir.2008).

98. *Gene And Gene*, 541 F.3d at 328.

element of the prima facie case, as *Meyer* instructs,[99] Kristensen must prove that lack-of-consent can be addressed with class-wide proof.[100] If Kristensen is correct that consent is an affirmative defense, then he must prove that he can defeat Defendants' consent argument with class-wide proof. The practical effect is the same: for purposes of class certification, Kristensen must prove that consent, or the lack thereof, can be resolved "on evidence and theories applicable to the entire class." [101]

The Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer.[102] This does not necessarily mean that defendants have an affirmative burden to produce evidence of consent to prevail at trial, however. It simply means that courts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given. It also means that courts should afford greater weight to a plaintiff's theory of class-wide proof of lack-of-consent when that theory is entirely unrebutted by the precise type of evidence which could do it greatest harm—evidence of express consent.

Defendants have not submitted any evidence of express consent. Their reliance on James Gee (of AC Referral Systems) and Michael Ferry (of 360 Data Management and Absolute ROI) is misplaced, as neither has personal knowledge whether Kristensen or the other purported class members consented when they visited one of the "hundreds" of websites that Defendants allege were the original sources of the cell phone numbers. In addition, AC Referral did not appear to have a mechanism to verify consent. Finally, the relevant records of AC Referral and 360 Data Management apparently are no longer available.[103] If, as it appears, Defendants can provide no evidence of consent, Defendants will probably lose on this issue regardless of who carries the burden at trial. Class members could provide individual affidavits averring lack of consent, and Defendants would be unable to rebut with anything other than the unfounded testimony of James Gee and Michael Ferry. Reviewing these affidavits would not be unduly burdensome for the Court, especially in light of the alternative of dealing with thousands of individual lawsuits.

Also, AC Referral acquired the cell phone numbers from two sources—360 Data Management LLC and Identity Defender—who in turn obtained the numbers from Absolute ROI. AC Referral sent the text messages, and AC Referral was under contract with defendant Click Media for marketing services. Kristensen correctly argues that, in light of the absence of evidence from Defendants about consent, a review of these entities' procedures as to obtaining consent should produce a common answer.[104] Kristensen therefore has

---

99. *Meyer,* 707 F.3d 1036.

100. *Fields v. Mobile Messengers Am., Inc.,* No. C–12–05160, 2013 WL 6073426 at *4 (N.D.Cal. Nov. 18, 2013).

101. *Stern v. DoCircle, Inc.,* No. SACV–12–2005, 2014 WL 486262 at *8 (C.D.Cal. Jan. 29, 2014).

102. *See Meyer,* 707 F.3d 1036; *Jamison v. First Credit Servs.,* 290 F.R.D. 92, 108 (N.D.Ill. 2013); *Silbaugh v. Viking Magazine Servs.,* 278 F.R.D. 389, 393 (N.D.Ohio 2012).

103. *Cf. Agne,* 286 F.R.D. at 566 n. 6 ("[I]t would be unfair to deny class certification because of the potential difficulty of identifying the class members where that difficulty is mostly due to the fact that [the defendant] destroyed the call lists that it used.").

104. *See Agne,* 286 F.R.D. at 567; *Kavu,* 246 F.R.D. at 647.

advanced a viable theory of class-wide proof of lack-of-consent.

If Defendants develop proof of consent that requires burdensome, individualized inquiries, the Court can take remedial measures up to and including decertification.[105]

### b. Superiority

To assess superiority, the Court examines the four factors of Rule 23(b)(3)(A)-(D).

### i. Class members' interests in individually controlling the prosecution or defense of separate actions.

 "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."[106] The $500 statutory damage amount for each violation, even if increased to $1,500 for willful violations, is insufficient to incentivize individual actions. If a possible verdict reaches into the tens of millions of dollars, that is because Congress chose to set a statutory damage amount for each violation and because the class is very large. The damages amount grows in direct proportion to the class size. The Court does not perceive any unfairness based on high damages.

### ii. Extent and nature of any litigation concerning the controversy already begun by or against class members.

The Court is unaware of any related, ongoing litigation.

### iii. Desirability or undesirability of concentrating the litigation of the claims in the particular forum.

Defendants have not challenged the District of Nevada as an improper forum.

### iv. Likely difficulties in managing a class action.

The Court does not perceive any difficulties. If any arise, such as individualized inquiries into consent, the Court can take remedial measures.

### 5. Rule 23(g)—Class Counsel

Defendants do not challenge Edelson PLC as class counsel. Having performed an independent review of the materials submitted by Kristensen, the Court approves Edelson PLC as class counsel.

## III. CONCLUSION

In accord with the above, the Court hereby ORDERS:

1. Click Media's motion to dismiss (Dkt. No. 65) is DENIED.

2. LeadPile's motion to dismiss (Dkt. No. 67) is DENIED.

3. Kristensen's motion for class certification (Dkt. No. 113) is GRANTED.

4. Under Fed.R.Civ.P. 23(c), the following class is certified:

All individuals who were sent a text message from telephone numbers "330–564–6316," "808–989–5389," and "209–200–0084" from December 5, 2011 through January 11, 2012.

4. Under Fed.R.Civ.P. 23(g), Edelson PLC is appointed as class counsel.

---

**105.** *See Stern*, 2014 WL 486262 at *8; *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D.Cal.2013).

**106.** *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir.2001).