**Ray MOHAMED, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**AMERICAN MOTOR COMPANY, LLC, a Florida limited liability company doing business as instantcaroffer.com doing business as ICO and Off Lease Only, Inc., a Florida corporation, Defendants.**

Case No. 15–23352–Civ–COOKE/TORRES

United States District Court, S.D. Florida.

Signed 07/12/2017

Bret Leon Lusskin, Jr., Bret Lusskin, P.A., Aventura, FL, Patrick Christopher Crotty, The Law Office of Scott D. Owens, Sean Martin Holas, Scott David Owens, Scott D. Owens, P.A., Hollywood, FL, Manuel Santiago Hiraldo, Hiraldo P.A., Seth Michael Lehrman, Steven R. Jaffe, Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L., Fort Lauderdale, FL, for Plaintiffs.

Jeffrey Aaron Backman, Greenspoon Marder, P.A., Lauren Marie Shoemake, Greenspoon Marder Law, Franklin Lewis Zemel, Alan Richard Poppe, Arnstein & Lehr, LLP, Fort Lauderdale, FL, Rebecca Ann Radosevich, North Lauderdale, FL, for Defendants.

## ORDER PARTIALLY ADOPTING MAGISTRATE's REPORT AND RECOMMENDATION ON PLAINTIFF's MOTION FOR CLASS CERTIFICATION

MARCIA G. COOKE, United States District Judge

THIS MATTER was referred to the Honorable Edwin G. Torres, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a Report and Recommendation on Plaintiff's Motion for Class Certification ("Report") (ECF No. 213). On May 24, 2017, Judge Torres held an evidentiary hearing on the Motion. On June 8, 2017, he issued a Report and Recommendation (ECF No. 279). The Parties each filed their objections to the Report and Recommendation on June 22, 2017, and subsequently filed responses to each others' objections on July 6, 2017. I have considered Judge Torres' Report, the Parties' objections and responses to objections, and made a *de novo* review of the record. I find Judge Torres' Report clear, cogent, and compelling.

Therefore, Judge Torres' Report (ECF No. 279) is **AFFIRMED and ADOPTED** *in part.* I only differ with Judge Torres' well-reasoned Recommendation as discussed below. In light of the Parties' objections and responses, the certified class shall be defined as follows:

All subscribers within the United States (i) who received a text message (ii) on his or her cellular telephone (iii) from InstantCarOffer.com, on behalf of Off Lease Only, Inc., (iv) through the use of the Twilio platform (v) after placing an advertisement on craigslist.org in connection with the sale of a vehicle (vi) for a period of four (4) years prior to the filing of the initial Complaint—September 4, 2011—to the date of class certification.

I find that narrowing the proposed class to individuals who posted their information on Craigslist.org ("Craigslist") is a reasonable narrowing based on Plaintiff's claims in his Amended Complaint (ECF No. 20) and the evidence in the record. As stated in Judge Torres' Recommendation, "[t]he class proposed by Plaintiff contains no limitations as to the means in which ICO allegedly obtained the telephone numbers that resulted in the messages that allegedly violated the TCPA ... and could include individuals that received texts from ICO after their numbers were obtained through other means. The record does not support inclusion of any such class members, and even if it did, we would have grave doubts as to Plaintiff's typicality with these additional class members." ECF No. 279, p. 10. I agree. However, I have expanded the class somewhat to allow for Plaintiff's allegations that the texts allegedly sent on behalf of Defendant constitute telemarketing, which would require Defendant to have had prior express *written* consent rather than prior express consent in advance of sending any autodialed text messages, rendering the content of a Craigslist ad relatively immaterial. As both Plaintiff and Defendant admit, the issue of prior express written consent can be decided easily on a classwide basis. Should the finder of fact ultimately

find that Defendant's text messages did not constitute telemarketing, the issue of prior express consent remains and can still be resolved without resorting to mini-trials.

Regarding Plaintiff's claim that including "through the use of an automatic telephonic dialing system" makes notice to the class "impossible" because Plaintiff could not notify the class until a merits issue had been resolved (a rather hyperbolic claim), the concern is easily resolved by substituting "the Twilio platform" for "an automatic telephonic dialing system." It has been demonstrated on the record that the only dialing platform at issue in this case is Twilio, and the issue of whether Twilio constitutes an automatic telephonic dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1), is an issue to be resolved on a classwide basis.

In all other respects, Judge Torres' Report and Recommendation is adopted.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Plaintiff's Motion for Class Certification (ECF No. 213) is **GRANTED in part**, in accordance with and as outlined above and in Judge Torres' Report and Recommendation (ECF No. 279).

**DONE and ORDERED** in Chambers, at Miami, Florida, this 12th day of July 2017.

## REPORT AND RECOMMENDATION ON PLAINTIFF's MOTION FOR CLASS CERTIFICATION

EDWIN G. TORRES, United States Magistrate Judge

This matter is before the Court on Plaintiff RAY MOHAMED's Motion for Class Certification, filed March 31, 2017.[1] [D.E. 213]. Defendant OFF LEASE ONLY, INC. filed its Response in Opposition to the Motion on April 21, 2017, [D.E. 228], and the Reply followed on May 3, 2017. [D.E. 243]. The undersigned held an evidentiary hearing on the Motion on May 24, 2017 and entertained arguments from both Parties. Following a review of the Motion, Response, Reply, the

relevant authorities and the record before us, the undersigned hereby **RECOMMENDS** that the Motion be **GRANTED in part**.

## I. FACTUAL BACKGROUND

This lawsuit stems from Plaintiff's receipt of a series of unwanted text messages allegedly sent by Off Lease Only, Inc. ("OLO") in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff contends that OLO contracted with InsantCarOffer.com ("ICO") to engage in a marketing campaign that involved sending text messages to potential customers using automated telephonic dialing systems. [D.E. 213, p. 10]. According to Plaintiff, ICO used a company called Liberty Metrics to "scrape," or electronically harvest, thousands of telephone numbers from individuals who placed online advertisements to sell vehicles on third-party websites such as www.craigslist.com ("Craigslist"). *Id.* Liberty Metrics would compile these "scraped" numbers and pass the information to ICO, who would in turn send text messages to those numbers in violation of the TCPA. *Id.*, p. 10–11. The actual substance of the text message would direct the person receiving the text to click on a "hyperlink" included in the message to fill out basic information about the vehicle. *Id.*, p. 11. The message indicated to the seller that the sender of the text intended to offer cash for the purchase of the vehicle. *Id.*

Plaintiff, however, claims that the entire setup was a ruse. He alleges that ICO used the text messaging campaign to encourage the seller of the vehicle to bring the car to one of OLO's used car lots under the auspices that a cash sale would take place. In reality, the marketing campaign sought to drive potential new customers to OLO's lots, with the hope that the enticement of a potential transaction would, in fact, result in the seller purchasing one of OLO's vehicles. With regard to OLO and ICO's actions towards Plaintiff, he claims that beginning in 2014, he posted advertisements on Craigslist offering several vehicles for sale. [D.E. 20, ¶ 27]. Plaintiff provided his cellular telephone in

1. The Honorable Marcia G. Cooke referred that Motion to the undersigned on April 3, 2017.

[D.E. 215].

these ads and contends that he specifically requested that any person responding to the advertisement should call, rather than text, his cell phone. *Id.* ¶ 28. Despite these warnings, Plaintiff received several text messages from ICO and OLO, even after he asked the companies to stop communicating with him. [D.E. 213, p. 10–11].

Plaintiff alleges that OLO should be held liable for the actions of ICO based on a theory of vicarious liability. Specifically, Plaintiff states that OLO had knowledge concerning how ICO obtained the numbers used in the text messaging campaign and approved ICO's actions in communicating with potential customers. [D.E. 213, p. 12–13]. Defendant denies these allegations, arguing that ICO acted without its knowledge and that it was unaware of the methods by which ICO sought to direct potential customers to OLO's website and used car lots. [D.E. 228, p. 5].

Plaintiff now asks this Court to certify the following class:

> All persons in the United States (i) who received a text message (ii) on his or her cellular telephone (iii) from InstantCarOffer.com for Off Lease Only, Inc. (iv) sent using Instant Car Offer.com's systems (v) from a period of four (4) years prior to the filing of the initial Complaint, September 4, 2011, to the date of class certification.

[D.E. 213]. Plaintiff supports the scope of the class definition with a sworn declaration from Thomas K. Rowe, co-owner of American Motor Company LLC. [D.E. 213–1]. In that declaration, Mr. Rowe states that he sent approximately 78,177 text messages on behalf of OLO to approximately 62,872 unique cellular telephone numbers. [D.E. 213–1, ¶ 11].

Defendant, on the other hand, argues that class certification is inappropriate. First, it contends that absent class members have not suffered a "concrete" legal injury sufficient to satisfy Article III's standing requirements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351

(1992). Next, OLO argues that individualized issues render class certification inappropriate, based almost entirely on the fact that certain Craigslist advertisers may have expressly consented to receiving text message communications at the time the seller placed those advertisements online. [D.E. 228, p. 17]. OLO also claims that Plaintiff's specific injuries are not typical of those suffered by other potential class members, and that the potential award of "disproportionate damages" in light of the actual harm that allegedly occurred should preclude certification under Rule 23(b)'s superiority inquiry. *Id.*, p. 25, 28–29.

The matter is now fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

### A. The TCPA

■ The TCPA prohibits any individual or entity from using an automated telephonic dialing system to place calls to any cell phone number without the called party's prior express consent. 47 U.S.C. § 227(b)(I)(A)(iii); *see also Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015).[2] An automatic telephonic dialing system is defined as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator" to dial such numbers. 47 U.S.C. § 227(a)(1). The TCPA creates a private right of action for any person who receives any type of prohibited communication protected under the Act. *Id.* at § 227(b)(3). A party may seek an injunction against the prohibited conduct, recover damages in the amount of $500.00 for each violation, or both. *Id.* If a plaintiff can show that a defendant willfully or knowingly violated the Act, a court may "increase the amount of the award to an amount equal to not more than 3 times the amount available" for each violation. *Id.*

### B. Class Certification Standard and Rule 23 Requirements

■ Rule 23 of the Federal Rules of Civil Procedure establishes "the legal road-

---

**2.** A text message to a cellular telephone qualifies as a "call" within the meaning of the TCPA. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013); *Satterfield v. Simon & Schus-* *ter, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009); *Legg v. Voice Media Group, Inc.*, 20 F.Supp.3d 1370, 1373 (S.D. Fla. 2014).

map courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). The class action serves as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176, and Rule 23 does not merely set forth a pleading standard. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). A party seeking class certification must affirmatively demonstrate compliance with [Rule 23]," *id.*, and a district court "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Vega v. T–Mobile U.S.A. Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009). Although a district court "should not determine the merits of plaintiff's claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug*, 350 F.3d at 1188, n.15 (11th Cir. 2003). Thus, a district court may "probe behind the pleadings before coming to rest on the certification question." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

 A district court has broad discretion in deciding whether or not to certify a class. *De Leon–Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1218 (11th Cir. 2007) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 711 (11th Cir. 2004)). For a district court to certify a class action, the named plaintiff must have standing, and the putative class must meet each of the requirements specified in Rule 23(a), as well as at least one of the requirements of Rule 23(b). *Vega*, 564 F.3d at 1265. In addition, "[a] plaintiff seeking certification of a claim for class treatment must propose an adequately defined class that satisfies the requirements of Rule 23." *C–Mart, Inc. v. Metropolitan Life Ins. Co.*, 299 F.R.D. 679, 685 (S.D. Fla. 2014) (citing *Abby v. Paige*, 282 F.R.D. 576, 578 (S.D. Fla. 2012)). The burden of proof to establish propriety of class certification rests with the advocate of the class. *Valley Drug*, 350 F.3d at 1187.

 Under Rule 23(a), a putative class may only be certified if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). If Rule 23(a)'s requirements are met, a district court must then determine whether the proposed class satisfies the requirements of Rule 23(b). *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires him to demonstrate that common questions predominate over individual interests and that a class action is the superior means of adjudicating the controversy. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Whether an issue predominates "can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Klay v. Humana Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). Superiority is determined where the moving party can demonstrate "increased efficiency" through the class mechanism. *Jackson v. Motel 6 Multipurpose Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997).

### III. ANALYSIS

#### A. *Standing*

 Prior to the certification of a class, and before undertaking any analysis under Rule 23, a district court must determine that the named representative has Article III standing to raise each class claim. *Wolf Prado–Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Griffin v. Dugger*, 823 F.22d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing."). "Only after the court determines the issues for which the named plaintiffs have standing should it address the

question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Griffin*, 823 F.2d at 1482.[3] Our inquiry does not end there, however. Before a court grants a party's request to proceed as a class, a plaintiff must also establish that the proposed class is "adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304; *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). It must therefore be possible to identify the class members on the basis of "objective criteria" and through a "manageable process that does not require much, if any, individual inquiry." *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, *4 (S.D. Fla. Dec. 24, 2014) (quoting *Newberg on Class Actions*, § 3.3, p. 164 (5th ed. 2012)).

In our view, and based on the evidence presented by both Parties at the May 24, 2017 hearing, the Court believes that the scope of Plaintiff's proposed class is far too broad and requires substantial modification. *See Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) ("Rule 23(c)(1) specifically empowers district courts to alter or amend class certification at *any* time prior to a decision on the merits.") (emphasis in original); *Shin v. Cobb County Bd. of Education*, 248 F.3d 1061, 1064 (11th Cir. 2001) (stating the Court retains "the ability, and perhaps even a duty, to alter or amend a certification decision" as circumstances change); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("District Courts are permitted to limit of modify class definitions to provide the neces-

sary precision."). Plaintiff's proposed class definition ignores many of the salient details that convinced Judge Cooke to find that Plaintiff suffered an injury sufficient to confer Article III standing in this matter. [D.E. 212].

In that Order, Judge Cooke determined that Plaintiff had standing because he "was affected [by the violation of the TCPA] in a 'personal and individual way' " and, after posting an advertisement to sell vehicles on the Craigslist website, he allegedly received at least one unwanted text message on his phone. *Id.*, p. 2–3. Judge Cooke also discussed Plaintiff's concrete injury, which consisted of an alleged "invasion of privacy, nuisance and trespass on his cellular telephone." *Id.*, p. 3. In Judge Cooke's view, the advertisements posted to Craigslist by Plaintiff "specifically warned third parties not to contact him with unsolicited services or offers, and not to text [him] at all," yet he continued receiving text messages despite these warnings. *Id.*

The class proposed by Plaintiff contains no limitations as to the means in which ICO allegedly obtained the telephone numbers that resulted in the messages that allegedly violated the TCPA—i.e., through the "scraping" of numbers off Craigslist advertisements—and could include individuals that received texts from ICO after their numbers were obtained through other means.[4] The record does not support inclusion of any such class members, and even if it did, we would have grave doubts as to Plaintiff's typicality with these additional class members.[5]

---

3. We reject Defendant's contention that absent class members must have Article III standing. *Cf. Spokeo, Inc. v. Robins*, ─── U.S. ───, 136 S.Ct. 1540, 1547, n.6, 194 L.Ed.2d 635 (2016) ("That a suit may be a class action…adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.' ") (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n.20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)); *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("What is true is that a class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the

members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification.").

4. Defendant indicated that Plaintiff also posted advertisements to Facebook, Instagram and the website www.rodsclassics.com. [D.E. 228, p. 5, n.1]. However, we see no record evidence concerning those posts or whether Plaintiff received text messages in connection with those advertisements.

5. Limiting the class to those who posted on Craigslist is also supported due to Plaintiff's reliance on the Craigslist website's "Terms of Use" at the May 24 hearing. Those terms state the following:

▮ Accordingly, the proposed class should be modified to better align with Judge Cooke's Order on Standing. [D.E. 212]. We therefore recommend that the proposed class be defined as follows:

> All subscribers within the United States (i) who received a text message (ii) on his or her cellular telephone (iii) from InstantCarOffer.com, on behalf of Off Lease Only, Inc. (iv) through the use of an automatic telephonic dialing system (v) after placing an advertisement on www.craigslist.com in connection with the sale of a vehicle (vi) that specifically contained warnings to third parties prohibiting the contact of the seller (vii) via text message or (viii) otherwise requested that the seller not be contacted with unsolicited offers (ix) for a period of four (4) years prior to the filing of the initial Complaint—September 4, 2011—to the date of class certification.[6]

This class meets the ascertainability requirement. The record evidence before us reflects that 875 cell phone numbers that were allegedly "scraped" by ICO and Liberty Metrics had been matched to their specific Craigslist advertisement. Ten of those ads included warnings within the advertisement forbidding any potential buyers from contacting the seller via text; 239 advertisements indicated that communicating via text was acceptable; and the remaining 626 did not indicate either way how they wished to receive communications about the ads. [D.E. 228, p. 6–7; 229, ¶¶ 9–14; 229–1].[7] The ability to trace the alleged "scraped" phone numbers to the exact Craigslist advertisements at issue provides a manageable process for identifying class members using objective criteria—i.e., whether the class members consented to receive such communications by posting ads on Craigslist and received text messages as a result of those advertisements that violated the TCPA's statutory guidelines. Therefore, the class as defined by this Court is ascertainable.

Defendant argues that class certification is inappropriate because the Court would be required to resort to "mini-trials" to determine whether the text messages were actually *received* by class members in order to determine standing and ascertainability of the class. We disagree. In *Palm Beach Golf Center–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, the Eleventh Circuit confronted an Article III standing challenge in a TCPA case that involved the alleged receipt of unsolicited facsimile advertisements from a Florida dental practice. *See* 781 F.3d 1245, 1248 (11th Cir. 2015). The district court found that the golf center lacked Article III standing "because it was unable to demonstrate that it had suffered an injury in fact," and concluded that "there was no evidence that any employee of Plaintiff's saw or printed the transmitted fax." *Id.* The Eleventh Circuit reversed and determined that the golf center had alleged an injury sufficient to confer Article III standing. The Court explained:

> While the record does not demonstrate that the fax advertising Defendant's dental practice was printed or seen by any of Palm Beach Golf's employees, there in unrefuted evidence that the fax information was successfully transmitted by [the] fax

---

**USE.** You agree not to use or provide software (except for general purpose web browsers and email clients, or software expressly licensed by us) or services that interact or interoperate with [Craigslist], e.g. for downloading, uploading, posting, flagging, emailing, search, or mobile use. Robots, spiders, scripts, scrapers, crawlers, etc. are prohibited, as are misleading, unsolicited, unlawful, and/or spam postings/email. You agree not to collect users' personal and/or contact information ("PI").

If, as Plaintiff contends, these terms can be used to defeat any consent argument raised by Defendant, it must also follow that the class must be limited to persons who would actually be protected by those terms of use (i.e., those posting advertisements on Craigslist, as opposed to Instagram, Facebook or any other website).

**6.** Hereinafter, "the modified class." This "modified" class definition assumes that those posts that included language that "texts are ok" expressly consented to receive those messages for purposes of the TCPA. If the District Court determines that such language did not, in fact, constitute express consent under the statute, the class definition found in this Report and Recommendation can easily be adjusted to include those who might otherwise be excluded by same.

**7.** These advertisements were the only such evidence presented at the evidentiary hearing that showed an actual connection between the individual cell phone numbers allegedly sent text messages and the Craigslist advertisements from which those numbers were scraped.

machine and that the transmission occupied the telephone line and fax machine of [the golf center] during that time...This occupation of Plaintiff's fax machine is among the injuries intended to be prevented by the [TCPA] and is sufficiently personal or particularized to Palm Beach Golf as to provide standing.

*Id.* at 1253. The Eleventh Circuit then cited—with approval—to several cases holding that receipt is *not* a prerequisite to confer standing in lawsuits alleging violations of the TCPA.[8]

■ In light of this guidance, we find that violation of the TCPA occurs at the moment the text messages were allegedly sent. Such a finding is supported by an examination of the plain language of the statute, which states that "it shall be unlawful" for a party "to *make* any call...using any automatic telephone dialing system," to "*initiate* any telephone call to any residential telephone line," or to "*send*, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(A)—(C); *see also Hinman v. M & M Rental Cntr., Inc.*, 596 F.Supp.2d 1152, 1159 (N.D. Ill. 2009) (reading a "receipt" requirement into the TCPA "imports elements that neither Congress, nor the FCC, nor any soundly reasoned authority has stated are part of a TCPA claim.").

Nevertheless, even if the TCPA required a finding of actual receipt of the text messages at issue, we are not required to make such a finding prior to certification of the modified class. *See Kristensen v. Credit Payment Services*, 12 F.Supp.3d 1292, 1303 (D. Nev. 2014) (proposed definition of class met ascertainability requirement for certification of consumer's class action against payday lender and its marketers for violation of TCPA; definition included any individual who had been sent a text message on a cellular telephone from one of three telephone numbers during an approximate one-month period, so data from telephone calling lists could be used to identify the individual class members and prospective plaintiffs could readily identify themselves as class members based on receipt of the message); *St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.*, 2013 WL 6498245, *4 (E.D. Mo. Dec. 11, 2013) ("[B]ased on the plain language of the statute, including in the class all persons who were sent a fax—even if they never received it—does not render the class unascertainable or overbroad.").

Accordingly, we find that Plaintiff has cleared the initial hurdle of demonstrating standing and ascertainability of the modified class. We now turn to the requirements of Rule 23(a) and (b) to determine whether the class should, in fact, be certified in accordance with the Federal Rules of Civil Procedure.

### B. *Rule 23(a) Requirements*
#### 1. *Numerosity*

■ Although mere allegations of numerosity are insufficient, Rule 23(a)(1) imposes a "generally low hurdle" and a plaintiff need not show the precise number of members in the class. *Vega*, 564 F.3d at 1267. While there is no bright-line rule, the general rule of thumb in the Eleventh Circuit is that "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3b Moore's Federal Practice ¶ 23.05[1] at n. 7 (1978)); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013). The plaintiff must ordinarily demonstrate some evidence of the number of purported class members; mere speculation and

8. *See id.*, citing to *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 309 (D.N.J. 2013) ("Plaintiff has produced evidence that the fax advertisements were successfully sent, and the B2B evidence is sufficient standing purposes. *The TCPA does not specifically require proof of receipt.*"); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, at *3 (N.D. Ill. Mar. 19, 2013) ("In enacting the TCPA, Congress chose to make evidence of transmission of the facsimile sufficient for Article III standing by the plain language of the statute. *Therefore, the question of whether Plaintiff actually received the facsimile is irrelevant to liability under the TCPA.*"); *A Fast Sign Co. v. Am. Home Servs., Inc.*, 291 Ga. 844, 734 S.E.2d 31, 33 (2012) ("Neither Congress nor the [FCC], which is tasked with issuing regulations implementing the TCPA, *require proof of receipt to establish a private cause of action.*") (emphasis added; internal quotations omitted).

general allegations of numerosity will not suffice. *Vega*, 564 F.3d at 1267 ("[A] plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding.").

██ According to records produced in this case, at least 880 of the numbers compiled by Liberty Metrics involved telephone numbers "scraped" from Craigslist advertisements. Even removing the 239 individuals who indicated in their advertisements that communicating via text was acceptable—which, in our view, does not indicate consent to receive the communications at issue here—the class would still meet the numerosity requirement of Rule 23(a)(1). Accordingly, the Court is satisfied that the numerosity requirement has been met by Plaintiff.

### 2. Commonality

██ Under Rule 23(a)(2)'s commonality requirement, a class action must involve issues that are susceptible to class-wide proof. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Plaintiffs face a "low hurdle" in bearing this "light" burden, as commonality "does not require that all questions of law and fact raised be common." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide-resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350, 131 S.Ct. 2541 ("What matters to class certification…is not the raising of common questions—even in droves—but, rather the capacity of a class proceeding to generate common *answers* apt to drive the resolution of the litigation.") (internal quotation marks and citations omitted; emphasis original). For purposes of Rule 23(a)(2), "even a single common question will do." *Id.*

██ In this case, commonality is satisfied. The entire case revolves around an alleged common course of conduct performed by OLO, ICO and Liberty Metrics. *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (finding that commonality

under Rule 23(a)(2) to be generally met "if the allegations involve a common course of conduct by the defendant."). The case will turn on several overarching questions that are common to almost every member of the modified class. *See Williams*, 568 F.3d at 1355 ("Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'") (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). Those issues include whether OLO can be held vicariously liable for the actions of ICO and, by extension, Liberty Metrics, and whether the system used by ICO and Liberty Metrics to send the alleged text messages at issue can be considered an "automatic telephone dialing system" within the meaning of the TCPA. These common questions are sufficient to satisfy the "low hurdle" of Rule 23(a)(2). *Williams*, 568 F.3d at 1356.

Defendant's arguments to the contrary are not persuasive. Specifically, Defendant contends that the issue of whether members of the class provided "prior express consent" before receiving a text message from OLO or ICO must be determined on an individual basis, and that this is sufficient to deny class certification. [D.E. 228]. In support of this argument, Defendant claims that "courts in this District have routinely denied class certification because the question of consent needs to be determined individually as to each putative class member." [D.E. 228, p. 17–18]. Here, however, the modified class is restricted to telephone numbers "scraped" from a single, third-party website—Craigslist—which should ameliorate Defendant's concerns about the need to conduct individualized inquiries into whether each putative class member gave consent to receive the messages at issue. *See Manno*, 289 F.R.D. at 688 ("While Defendants again argue that consent was given when class members provided their phone numbers during the admissions process, this issue/defense is common to Manno and all putative class members. All went through the same or similar admissions process, during which they provided their phone numbers. Thus, Manno and the class will prevail or lose together both on their claims and on Defendants' affirmative de-

fense of consent."); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007) (commonality requirement for certification of class action under TCPA on behalf of all recipients of unsolicited facsimile advertisement was satisfied where sender allegedly derived all class members' contact information from same database and common issue existed as to whether recipients' inclusion in that database constituted express consent to receive ads); *Patten v. Vertical Fitness Group, LLC*, 2013 WL 12069031, at *8–9 (S.D. Cal. 2013) ("On this same logic, because Vertical Fitness alleges that gym members consented to receiving texts simply by providing a phone number when they joined the gym, liability turns on a common question.").

The issue of consent—and whether mere posting of an advertisement on Craigslist constitutes same within the meaning of the statute—can be determined without the need to engage in "mini–trials," as the resolution of the issue will apply to all members of the modified class.[9] *See Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327, 338 (E.D. Wisc. 2012) ("The facts determining the defendant's liability relate to the transmission of the faxes and do not relate to the individual recipients. The individual issues that the court foresees relate to the need to determine whether some of the recipients gave permission to receive the faxes prior to transmission or whether individual plaintiffs had an established business relationship with the defendant before receiving the fax at issue in this case. However, such issues are minor and can certainly be handled within the framework of a class action.").

Because "even a single common question will do," *Dukes*, 564 U.S. at 350, 131 S.Ct. 2541, we find that Plaintiff satisfied his burden under Rule 23(a)(2).

### 3. Typicality

In order to meet the typicality requirement under Rule 23(a)(3), a class representative must possess the same interest and suffer the same injury as the class members he or she represents. *Murray*, 244 F.3d at 811. The typicality requirement is similar to the commonality requirement but distinguishable because, "[a]lthough typicality and commonality may be related," the two concepts have been distinguished in that "[t]raditionally commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *C–Mart, Inc.*, 299 F.R.D. at 686 (quoting *Vega*, 564 F.3d at 1275)). "The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits." *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 677 (S.D. Fla. 2007). While the named representative's claims "need not be identical" to the class members' claims to satisfy typicality, there must be a " 'sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification.' " *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado-Steiman*, 221 F.3d at 1278–79). "This nexus exists 'if the claims or defenses of the class and the class representative arises from the same event or pattern or practice and are based on the same legal theory.' " *Ault*, 692 F.3d at 1216 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

Here, we find the nexus between the claims raised by Plaintiff and those of the modified class is sufficient to satisfy the typicality requirement of Rule 23(a)(3). Plaintiff's claims are typical of the modified class because both involve alleged violations of the same federal statute and arise from the same pattern or practice of conduct allegedly engaged in by Defendant—the use of ICO and Liberty Metrics to "scrape" telephone numbers from Craigslist advertisements and send

---

**9.** Nor does this finding require an individual analysis of every Craigslist submission from which telephone numbers were allegedly "scraped." The issue of whether mere posting indicated consent can be resolved prior to or at trial; if the answer to that question is yes, then the TCPA claim almost certainly collapses classwide. If the answer is no, the consent defense fails.

marketing text messages to individuals that may not have consented to receiving those communications. *See Cabrera v. Government Employees Insurance Co.*, 2014 WL 11894430, *4 (S.D. Fla. Sept. 26, 2014) ("The Court finds that Plaintiff's claims are typical of the proposed cellular-only class because his claims arise from the same practice— Bell's use of LiveVox to place calls to cellular numbers—and are premised on the same TCPA violation."); *Shamblin v. Obama for America*, 2015 WL 1909765, *8 (M.D. Fla. Apr. 27, 2015) (typicality requirement satisfied because the "same unlawful conduct is the sending of autodialed or pre-recorded calls to cell phones that are prohibited by the TCPA.").

 Defendant claims that the proposed class cannot satisfy the typicality requirement because Plaintiff engaged in "live" exchanges with employees of ICO following receipt of certain text message at issue. [D.E. 228, p. 26]. Defendant also argues that the injuries Plaintiff complains of are "unique." *Id.* These arguments are insufficient. It is true that "when the class representative's injury is different from that of the rest of the class, his claim is not typical and he cannot serve as the class representative." *Shamblin*, 2015 WL 1909765 at *8 (quoting *Murray*, 244 F.3d at 811). "Typicality, however, *does not require identical claims* or defenses," and "[a] factual variation will not render a class representative's claim atypical unless the factual position of the representative *markedly* differs from that of other members of the class." *Kornberg*, 741 F.2d at 1337 (emphasis added). Any "variations" raised by Defendant are not so significant as to mandate denial of class certification; Plaintiff has met his burden in demonstrating his claims are typical of members of the modified class and that the alleged violations of the statute stem from the same course of conduct. *See Shamblin*, 2015 WL 1909765 at *8. Accordingly, he has satisfied his burden under Rule 23(a)(3).

#### 4. Adequacy

 To satisfy the adequacy requirement, the named plaintiff and his or her counsel must demonstrate that they will ade-quately protect the interests of the putative class. *Valley Drug*, 350 F.3d at 1189. The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between plaintiff or his attorneys and the class; and (2) whether plaintiff and his lawyers will adequately prosecute the action. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (citing *Valley Drug*, 350 F.3d at 1189).

 Defendant does not challenge adequacy under Rule 23(a)(4). [D.E. 228; 274, p. 81–82, l. 22–1]. Nevertheless, we find that Plaintiff will serve as an adequate representative of the proposed class, as there are no apparent conflicts of interest and the case will proceed based on similar facts under a shared theory of recovery. Plaintiff has also shown a willingness to participate fully in the prosecution of this action. Likewise, we find that Plaintiff's counsel will adequately protect the interests of the absent class members. Plaintiff's attorneys are experienced in prosecuting class actions and have demonstrated familiarity with the TCPA. Counsel has also demonstrated that they will capably advocate on Plaintiff's behalf, as reflected by the substantial motion practice in this action. Accordingly, we find the adequacy requirement of Rule 23(a)(4) to be satisfied with respect to Plaintiff and his attorneys.

#### C. Rule 23(b) Requirements

Rule 23(b)(3) requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 26(b)(3).

#### 1. Predominance

 To obtain Rule 23(b)(3) certification, the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole must predominate over those issues that are subject only to individualized proof. *See Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557–58 (11th Cir.

1989)). Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on their entitlement to relief. *Babineau*, 576 F.3d at 1191. If plaintiffs must present a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their claims, certification under Rule 23(b)(3) is inappropriate. *Id.* "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc., v. Halliburton Co.*, 563 U.S. 804, 809, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011).

To establish a TCPA violation under § 227(b)(1)(A)(iii), the plaintiffs will have to show that: (1) the defendants placed calls; (2) to their cellular phones; (3) using an automatic dialing system. *Cabrera*, 2014 WL 11894430, *5; *Manfred v. Bennett Law, PLLC*, 2012 WL 6102071, *2 (S.D. Fla. Dec. 7, 2012). The question of whether ICO sent the text messages on behalf of OLO and whether OLO had knowledge of the text messaging campaign is a central issue to the claims asserted by each member of the modified class. Likewise, whether ICO used an automated telephonic dialing system to send the text messages and caused injuries to the class members is an issue that predominates over those that may be considered individualized. The resolution of each issue will directly impact the resolution of the claims of the modified class and whether each can establish liability against OLO under the TCPA.

Undeterred, Defendant argues that "individualized" issues regarding "prior express consent" preclude a predominance finding. However, to support this contention, Defendant has only offered "bare assertions" concerning express consent without identifying a single instance in which such consent was, in fact, obtained prior to the sending of the text messages at issue here.[10] Such bare assertions cannot defeat certification under Rule 23. *See Cabrera*, 2014 WL 11894430 at *5, n.4; *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent...is not sufficient to defeat class certification."); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (finding that the issue of individual consent did not preclude class certification when defendant "did not show a single instance where express consent was given before the call was placed."); *G.M. Sign, Inc. v. Grp. C Communications, Inc.*, 2010 WL 744262 at *3 (N.D. Ill. Feb. 25, 2010) ("[U]nsupported speculation that some of the proposed class members may have independently consented does not warrant denial of class certification."). The Court finds that Defendant's conclusory argument that some members of the putative class may have provided express consent to receive the text messages from ICO is without merit and will not otherwise bar class certification. *Cabrera*, 2014 WL 11894430.

We find that the issues that are subject to generalized proof and applicable to the class as a whole predominate over the issues that would require individualized proof. As such, Plaintiff has established predominance under Rule 23(b).

### 2. *Superiority*

The focus of the superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. Consequently, the predominance analysis has a "tremendous impact on the superiority analysis...for the simple reason that, the more common issues predominate over individual

---

**10.** While it may be true that Plaintiff at some point engaged with a "live" person after placing advertisements on Craigslist, [D.E. 228, p. 26], we are not convinced that such a conversation would serve as "prior express consent" under the TCPA. 47 U.S.C. § 227(b)(1)(A). Nevertheless, even if it did, Plaintiff later expressly revoked that consent by asking that ICO stop sending messages to his cellular phone, a point that Defendant concedes in its briefing materials. *Id.*

("After texting 'stop,'...ICO sent the next two text messages that Plaintiff complains of in this action, on January 16, 2015 and April 9, 2015."); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (2015 FCC Ruling), 30 FCC Rcd. 7961, 7989–7990. ("[W]e clarify that a called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur.").

issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id.* The rule sets forth four specific, albeit non-exclusive, considerations pertinent to these findings: (1) the class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3); *Vega*, 564 F.3d at 1277. Fed. R. Civ. P. 23(b)(3)(A)–(D); *Williams*, 568 F.3d at 1358; *Klay*, 382 F.3d at 1273. If a district court determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions. *Williams*, 568 F.3d at 1358.

■ As discussed above, we find that common questions of law and fact predominate over the alleged individualized issues that may arise as a result of certification. Hence, due to the strong presumption that stems from this finding of predominance, we also conclude that a class action would be the superior method for litigating the modified class members' claims fairly and efficiently. Prosecuting the claims as a class is the superior option because the issues involved in Plaintiff's claim and the allegations he uses to support same would be, for all intents and purposes, identical to those raised in individual suits brought by any of the members of the modified class. The issues that Defendant's argue weigh against a finding of liability—most significantly, consent and standing—would likewise all be issues raised in each party individual lawsuit. Finally, prosecution and adjudication of each of these individual claims, rather than disposition of the matter on a classwide basis, would be judicially inefficient and a waste of this Court's resources. For these reasons, the class action mechanism is superior to individual lawsuits that raise identical allegations to those contained in Plaintiff's Amended Complaint.

We are not persuaded by Defendant's contention that "disproportionate damages weigh against a finding of superiority." [D.E. 228, p. 28]. OLO claims that because "there is no evidence that Plaintiff, or any other putative class members, suffered any *actual* injury arising from ICO's text messaging," the potential exposure that could result from each statutory violation should weigh significantly against class certification. *Id.*, p. 29. We reject this contention; the issue of the sheer size of the potential damages exposure has been mollified by the restrictions placed on Plaintiff's proposed class as a result of this Court's modification, detailed above.

Defendants nevertheless argue that class certification would subject them to damages that could lead to bankruptcy, and that this requires careful examination prior to certification. *Id.*, p. 29. To support this argument, Defendant cites to *London v. Wal–Mart Stores, Inc.* and *Leysoto v. Mama Mia I, Inc.*[11] Yet, in *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, a case involving alleged TCPA violations stemming from the sending of unsolicited facsimile transmissions, Judge Seitz confronted the same argument advanced by Defendant here. *See* 2014 WL 7366255, *8–10. In that case, defendant's made the same challenge to superiority, arguing that the threat of class damages "would subject them to potentially ruinous liability on the basis of an unintentional, technical violation of the [TCPA]." *Id.* at *8. Judge Seitz discussed both *London* and *Leysoto* and rejected their applicability:

> *London v. Wal–Mart Stores, Inc.* noted that economic harm may be required for superiority if the defendant's potential liability for violating a complex regulatory scheme, subject to different reasonable interpretations, would be enormous and completely out of proportion to any harm suffered by the plaintiff. However, this statement was dicta: *London's* actual holding was that the class representative was inadequate because he had significant personal and financial ties to with class counsel. Moreover, the TCPA is not a complex regulatory scheme, subject to different reasonable interpretations. Therefore,

11. *See* 340 F.3d 1246 (11th Cir. 2003); 255 F.R.D. 693 (S.D. Fla. 2009) (respectively).

Defendants' citation to *London* is unavailing.

Finally, *Leysoto v Mama Mia I., Inc.* held that a class action was not superior to individual actions under the Fair and Accurate Credit Transactions Act ("FACTA") for two reasons that were expressly specific to the facts in that case. First, the class had 46,000 members and the defendant had $40,000 in net assets, so a judgment would bankrupt the defendant only to serve no compensatory function because so much of the recovery would be used up in administrative costs. Second, the plaintiff's individual action had already brought the defendant into compliance with the FACTA, so certificating a class action would serve no deterrent function.

*Id.* at \*10. (internal citations and quotations omitted). As Judge Seitz makes clear, both cases were inapplicable to a plaintiff seeking class certification based on violations of the TCPA, and the request to deny certification based on "ruinous" damages did not preclude a finding of superiority. *Id.*

We agree with Judge Seitz that the threat of disproportionate damages is "not [an] appropriate consideration for a court assessing the superiority of a class action." *Id.* at \*9. While Defendants may potentially face larger damages in a class action, it does not follow that any damages awarded would be disproportionate. *Manno*, 289 F.R.D. at 691. The text of the statute makes absolutely plain that, in Congress's judgment, damages of $500 for each violation, or triple that if the violations are willful, are proportionate and appropriate compensation for the consumer. *Id.* "That proportionality does not change as more plaintiffs seek relief; indeed, the size of [a defendant's] potential liability expands at exactly the same rate as the class size." *Bateman v. Am. Multi–Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010). "[T]he Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations." *See Phillips Randolph Enters., LLC v. Rice Fields*, 2007 WL 129052, at \*3 (N.D. Ill. Jan. 11, 2007).

Based on the present record, the Court finds it would be premature and speculative to deny certification on the mere possibility that damages may be disproportionate to the actual harm suffered by the modified class.[12] "That contingency will be dealt with another day, should it come to pass." *Manno*, 289 F.R.D. at 692; *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("While a statute remains on the books, however, it must be enforced rather than subverted. An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified."). Accordingly, we find that Plaintiff has satisfied the superiority requirement under Rule 23(b)(3).

## IV. CONCLUSION

We hereby find that the proposed class, as modified by the undersigned, meets all requirements of Rule 23 of the Federal Rules of Civil Procedure. We therefore **RECOMMEND** that Plaintiff's Motion be **GRANTED in part**, in accordance with and as outlined above.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3–1; *see, e.g., Patton v. Rowell*, 678 Fed.Appx. 898 (11th Cir. 2017); *Cooley v. Commissioner of Social Security*, 671 Fed.Appx. 767 (11th Cir. 2016).

---

**12.** It would be remiss of the Court to fail to point out that, despite Defendant's argument about the potential bankruptcy of OLO should the damages sought be awarded, it has not entered any evidence into the record that would support this contention.

**DONE AND SUBMITTED** in Chambers
at Miami, Florida, this 8th day of June, 2017.